**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HITESH PATEL,<br><br>Plaintiff,<br><br>vs.<br><br>METROMILE, INC., DAN PRESTON, COLIN BRYANT, JOHN BUTLER, DAVID FRIEDBERG, SANDRA CLARKE, RYAN GRAVES, and VIKAS SINGHAL,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Hitesh Patel ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Metromile, Inc. ("Metromile" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants", collectively with the Company, the "Defendants"), Lemonade, Inc. ("Parent"), merger vehicles Citrus Merger Sub A, Inc. and Citrus Merger Sub B, LLC ("Merger Subs" and collectively with Parent, "Lemonade"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Parent

as a result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a November 9, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Metromile will become an indirect wholly-owned subsidiary of Lemonade. Metromile public stockholders will receive, in exchange for each share of Metromile stock, 0.05263 shares of Lemonade Common Stock.

3. Thereafter, on December 14, 2021, Lemonade filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Registration Statement describes an insufficient process in which the Metromile Board failed to include a collar mechanism to ensure that the consideration payable to Plaintiff and other Metromile stockholders remained in a realm of reasonableness.

5. Additionally, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on December 14, 2021 with the SEC in an effort to solicit Plaintiff to vote his Metromile shares in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Metromile

and Lemonade, provided by the Company and Lemonade to the Company's financial advisor Allen & Company LLC ("Allen & Company") and Lemonade's financial advisor Liontree Advisors LLC ("Liontree"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Allen & Company and/or Liontree and provided to the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of California and, at all times relevant hereto, has been a Metromile stockholder.

10. Defendant Metromile is a leading digital insurance platform in the United States. Metromile is incorporated under the laws of the State of Delaware and has its principal place of business at 425 Market Street #700, San Francisco, CA 94105.  Shares of Metromile common stock are traded on the NasdaqGS under the symbol "MILE."

11. Defendant Dan Preston ("Preston") has been a Director of the Company at all relevant times.  In addition, Preston serves as the Company's Chief Executive Officer ("CEO").

12. Defendant Colin Bryant ("Bryant") has been a director of the Company at all relevant times.

13. Defendant David Friedberg ("Friedberg") has been a director of the Company at all relevant times.  In addition, Friedberg is the Company's Founder.

14. Defendant John Butler ("Butler") has been a director of the Company at all relevant times.  In addition, Butler is the Company's Chairman of the Board of Directors.

15. Defendant Sandra Clarke ("Clarke") has been a director of the Company at all relevant times.

16. Defendant Ryan Graves ("Graves") has been a director of the Company at all relevant times.

17. Defendant Vikas Singhal ("Singhal") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party Parent offers renters' insurance, homeowners' insurance, car insurance, pet insurance and term life insurance in the United States as well as contents and liability policies in Germany, and the Netherlands, and renters insurance in France. Parent was founded in 2015 and is headquartered in New York, NY. Shares of Parent common stock are traded on the New York Stock Exchange under the symbol "LMND".

20. Non-Parties Merger Subs are each a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Metromile maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

24. Metromile provides pay-per-mile car insurance services in the United States and internationally. The Company also licenses artificial intelligence claims platform to automate claims, reduce losses associated with fraud, and unlock the productivity of insurance carriers' employees. In addition, it offers The Pulse, a device that plugs into the diagnostic port of its customer's car and transmits data over wireless cellular networks. The Company was incorporated in 2011 and is headquartered in San Francisco, California.

25. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the August 9, 2021 Earnings Call announcing its 2021 Q2 financial results, the Company highlighted such milestones as an increase in direct earned premiums and premium run rate as of June 30, 2021 and high new customer of one year retention, which measured a robust 68% for the second quarter.

26. Speaking on these positive results, CEO Defendant Preston commented on the Company's positive results as follows, "'We experienced several positive milestones. Driving returns in near pre-pandemic levels, which sparked a sizable increase in our direct earned premiums and premium run rate as of June 30, 2021. As more Americans continue hitting the road, we expect to continue to generate solid direct earned premium year-over-year growth on a more consistent basis. We continue to experience high new customer of one year retention, which measured a robust 68% for the second quarter. Drivers continue to switch to Metromile to-date, and we believe they stay with us because of the experience.'"

27. These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Metromile. Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory, the Individual Defendants have caused Metromile to enter into the Proposed Transaction without providing requisite information to Metromile stockholders such as Plaintiff.

*The Flawed Sales Process*

29.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.     Notably, the Registration Statement does not provide adequate information as to why the Board allowed the Proposed Transaction to be entered into without a collar mechanism preventing the stock consideration payable to Plaintiff and other Metromile stockholders to dipping to an unreasonable level.

31.     Additionally, the Registration Statement fails to provide adequate information regarding the specific powers of the Strategic Committee created to explore strategic alternatives, and specifically, if the Strategic Committee's approval was required for any potential strategic alternative.

32.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Lemonade and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

34. On November 8, 2021, Metromile and Lemonade issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **New York (November 8, 2021**)—Lemonade (NYSE: LMND) the insurance company powered by Al and social good, and Metromile (NASDAQ: MILE, Ml LEW), the data science company focused on auto insurance, have entered into a definitive agreement pursuant to which Lemonade will acquire Metromile in an all-stock transaction that implies a fully diluted equity value of approximately $500 million, or just over $200 million net of cash. Under the terms of the transaction, Metromile shareholders will receive Lemonade common shares at a ratio of 19:1. (Read more on why Lemonade is acquiring Metromile)
>
> While Lemonade has been at the forefront of using big data and Al in home and pet insurance, Metromile has been trailblazing a parallel path for car insurance. Metromile's car-mounted precision sensors took over 400 million road trips in recent years, covering billions of miles and sending real-time streams to the Metromile cloud. These were cross referenced with actual claims data, yielding precise predictions for losses per mile driven. These algorithms hold the promise of propelling Lemonade Car from a newcomer in the car insurance space to its vanguard.
>
> "We launched Lemonade Car lastweek, and we think you'll love how it looks and handles. Pop the hood and you'll see that it's powered by telematics and architected to learn from the data it generates, with precision pricing as its ultimate destination," said Daniel Schreiber, Lemonade CEO and cofounder. "That's where Metromile comes in. They have been down this road billions of times, and their proprietary data and machine learning algorithms can vault us over the most time and cost intensive parts of the journey. In a vast and competitive market like auto insurance, today's deal is a huge unlock of value for our customers and shareholders."
>
> Metromile enjoys 49 state licenses, over $100 million of seasoned in-force premium (IFP), over $250 million of cash on the balance sheet, and a team unmatched for their expertise in harnessing big data and Al for car insurance.
>
> "We've long admired Lemonade for its beautiful products, world-class customer experience, unprecedented growth, and socially-impactful business model," said Dan Preston, CEO of Metromile. "The data science-driven technology platform we built created fairer and more individualized car insurance for consumers in an industry marred by vast inequities. Joining forces with Lemonade Car will create the most customer-centric, fair, and affordable car insurance, and is a great outcome for Metromile shareholders, who will benefit as shareholders of the combined company. It also means that now, homeowners, renters, and drivers alike can have

all of their insurance needs with a single company that truly has their best interests at heart."

The transaction is expected to close during Q2 2022, once all regulatory approvals have been secured. The transaction requires the approval of Metromile stockholders, and is subject to other customary closing conditions.

*Potential Conflicts of Interest*

35. The breakdown of the benefits of the deal indicate that Metromile insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Metromile.

36. Notably, Company insiders, currently own large, illiquid portions of Company stock, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. Notably, while the Registration Statement provides the following it fails to provide an accounting of the amount of merger consideration that these holdings will convert to upon the consummation of the Proposed Transaction.

| Name of Beneficial Owner (>5%) (1) | Shares of Metromile Common Stock Owned | Percentage of Total Outstanding Metromile Common Stock (%) |
|---|---|---|
| **5% Stockholders** | | |
| China Pacific Property Insurance Co. Ltd.[(2)] | 13,694,416 | 10.6% |
| New Enterprise Associates 13, L.P.[(3)] | 10,451,259 | 8.1% |
| Miller Value Partners, LLC [(4)] | 8,003,265 | 6.2% |
| The Vanguard Group, Inc.[(5)] | 7,568,668 | 5.9% |
| Entities Affiliated with Hudson Structured Capital Management Ltd.[(6)] | 7,666,839 | 6.0% |
| Entities Affiliated with Index Ventures [(7)] | 7,201,738 | 5.6% |
| Magnetar Financial LLC [(8)] | 6,802,234 | 5.3% |
| **Directors and Executive Officers** | | |
| David Friedberg [(9)] | 4,190,978 | 3.2% |
| Dan Preston [(10)] | 2,225,603 | 1.7% |
| Paw Andersen [(11)] | 516,432 | * |
| Colin Bryant | - | - |
| Vikas Singhal [(6)] | 7,666,839 | 6.0% |
| Ryan Graves [(12)] | 3,551,267 | 2.8% |
| Sandra Clarke | - | - |
| John Butler | 117,500 | * |
| Mark Gundacker [(13)] | 116,975 | * |
| Directors and Executive Officers as a Group (12 in total) [(14)] | 18,877,706 | 14.3% |

37. In addition, Company insiders, currently own company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, however the Registration Statement fails to provide an accounting of such equity awards or the consideration that their holders will receive due to the consummation of the Proposed Transaction.

38. In addition, certain employment agreements with certain Metromile executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | Equity ($)[2][3] | Perquisites/ Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Dan Preston | 450,000 | 5,403,754 | 19,924 | 5,873,678 |
| Mark Gundacker[5] | — | — | — | — |
| Paw Anderson | 300,000 | 173,604 | — | 473,604 |

39. The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40. Thus, while the Proposed Transaction is not in the best interests of Metromile, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors

*The Materially Misleading and/or Incomplete Registration Statement*

41. On December 14, 2021, the Metromile Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

> *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

   a. Adequate information regarding why the Board agreed to a Proposed Transaction which did not contain a collar mechanism;

   b. Adequate information regarding the specific powers of the strategic committee and if their approval was required for the entry into any potential strategic alternative;

   c. Whether the confidentiality agreements entered into by the Company with Lemonade differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

   d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Lemonade, would fall away; and

   e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

> Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Metromile and Lemonade's Financial Projections*

43. The Registration Statement fails to provide material information concerning financial projections for Metromile and Lemonade provided by Metromile and Lemonade management to the Board, Allen & Company and/or Liontree and relied upon by Allen & Company in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

44. Notably the Registration Statement reveals that as part of its analyses, Allen & Company reviewed, "certain financial information relating to Metromile, including certain internal financial forecasts, estimates and other financial and operating data relating to Metromile, provided to or discussed with Allen & Company by the management of Metromile" as well as "certain financial information relating to Lemonade, including certain internal financial forecasts, estimates and other financial and operating data relating to Lemonade, provided to or discussed with Allen & Company by the management of Lemonade and as approved and extended per the management of Metromile."

45. Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that Metromile and Lemonade management provided to the Board, Allen & Company and/or Liontree. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own

estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46. With regard to the *July Metromile Projections* provided by Metromile Management, the Registration Statement fails to disclose material line items for the following metrics:

   a. Contribution Profit, including all underlying necessary metrics, adjustments, and assumptions, including specifically: premiums, interest and other income, losses, loss adjustment expense, premium taxes, bad debt, payment processing fees, data costs, underwriting reports and other costs related to servicing policies.

47. With regard to the *October Metromile Projections* provided by Metromile Management, the Registration Statement fails to disclose material line items for the following metrics:

   a. Contribution Profit, including all underlying necessary metrics, adjustments, and assumptions, including specifically: premiums, interest and other income, losses, loss adjustment expense, premium taxes, bad debt, payment processing fees, data costs, underwriting reports and other costs related to servicing policies; and

   b. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: after-tax operating income, capital expenditures, depreciation and amortization, and change in net working capital.

48. With regard to the *Extrapolated Lemonade Projections* provided by Lemonade Management and further extrapolated upon by Metromile Management, the Registration Statement fails to disclose material line items for the following metrics.

a. Adjusted Gross Profit, including all underlying necessary metrics, adjustments, and assumptions, including specifically: gross profit, net investment income, employee-related costs, professional fees and other, and depreciation and amortization (allocated to cost of revenue);

b. EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net loss, the impact of interest expense, income tax expense, depreciation, amortization, stock-based compensation, net investment income and other transactions that Lemonade considers to be unique in nature; and

c. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: stock-based compensation expense, cash taxes, capital expenditures, and change in working capital.

49. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Allen & Company's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Allen & Company*

52. In the Registration Statement, Allen & Company describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53. With respect to the *Selected Public Companies - Metromile* analysis, the Registration Statement fails to disclose the following:

    a. The specific metrics for each compared company; and

    b. The specific inputs and assumptions used to determine the utilized reference range of calendar year 2022 estimated gross earned premium multiples of 1.5x to 2.5x.

54. With respect to the *Selected Public Companies - Lemonade* analysis, the Registration Statement fails to disclose the following:

    a. The specific metrics for each compared company; and

    b. The specific inputs and assumptions used to determine the utilized reference range of calendar year 2022 estimated gross earned premium multiples of 4.0x to 6.0x;

    c. The specific inputs and assumptions used to determine the utilized reference range of calendar year 2023 estimated adjusted gross profit multiples of 20.0x to 30.0x

55. With respect to the *Selected Precedent Transactions Analysis* the Registration Statement fails to disclose the following:

    a. The specific metrics for each precedent transaction;

    b. The date on which each precedent transaction closed;

    c. The aggregate value of each precedent transaction; and

        d.   The specific inputs and assumptions used to determine the utilized reference range of latest 12 months gross earned premium multiples of 1.5x to 2.5x.

56. With respect to the *Discounted Cash Flow Analysis - Metromile*, the Registration Statement fails to disclose the following:

        a.   The amount of stock-based compensation treated as a cash expense utilized;

        b.   The specific inputs and assumptions used to determine the calendar year 2022 estimated net operating profit after-tax multiples for the Metromile selected mature insurance companies range of 12x to 19x;

        c.   The specific inputs and assumptions used to determine the utilized median calendar year 2021 estimated revenue multiple of 6.3x;

        d.   The utilized terminal values for Metromile;

        e.   The specific inputs and assumptions used to determine the utilized range of net operating profit after-tax multiples of 16.0x to 19.0x;

        f.   The specific inputs and assumptions used to determine the utilized selected revenue multiple of 6.5x; and

        g.   The specific inputs and assumptions used to determine the utilized discount rate range of 8.5% to 9.5%.

57. With respect to the *Discounted Cash Flow Analysis - Lemonade*, the Registration Statement fails to disclose the following:

        a.   The amount of stock-based compensation treated as a cash expense utilized;

        b.   The specific inputs and assumptions used to determine the calendar year 2022 estimated net operating profit after-tax multiples for the Lemonade selected mature insurance companies range of 12x to 19x;

        c.   The utilized terminal values for Lemonade;

        d.   The specific inputs and assumptions used to determine the utilized range of net operating profit after-tax multiples of 16.0x to 19.0x; and

  e. The specific inputs and assumptions used to determine the utilized discount rate range of 8.0% to 9.0%

58. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Metromile stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

60. Plaintiff repeats all previous allegations as if set forth in full herein.

61. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

62. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

63. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

- 16 -
COMPLAINT

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

67. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

68. Plaintiff repeats all previous allegations as if set forth in full herein.

69. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Metromile's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a

result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

72.     The Individual Defendants acted as controlling persons of Metromile within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Metromile to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Metromile and all of its employees.  As alleged above, Metromile is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to comply with the Exchange Act to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 30, 2021

**BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*